# United States Court of Appeals
## For the First Circuit
_____

No. 23-1656

### TIMOTHY DEBRITTO,

Plaintiff - Appellant,

v.

PATRICIA A. COYNE-FAGUE, in her individual capacity only as the former Director of the Rhode Island Department of Corrections; WAYNE T. SALISBURY, JR., in his official capacity only as the current Acting Director of the Rhode Island Department of Corrections; JENNIFER CLARKE, in her individual and official capacity as the Medical Director of the Rhode Island Department of Corrections; LYNNE CORRY, in her individual and official capacity as the Warden of Maximum Security,

Defendants - Appellees,
_____

Appeal from a Final Decision of the United States District Court
for the District of Rhode Island
### BRIEF FOR DEFENDANT-APPELLEE
### JENNIFER CLARKE

_____

**DEFENDANT/APPELLEE
JENNIFER CLARKE**

By Her Attorneys,

**TATE & LATHAM LLC**

/s/ Christine A. Stowell
/s/ Jeffrey G. Latham
_____
Jeffrey G. Latham, Esquire [USCA # 81218]
Christine A. Stowell, Esquire [USCA #1196623]
40 Westminster Street, Suite 350
Providence, RI 02903
401.421.7400   401.351.3239 [Fax]
jlatham@tatelawri.com
cstowell@tatelawri.com

## <u>TABLE OF CONTENTS</u>

I.     REASONS WHY ORAL ARGUMENT NEED NOT BE HEARD………..8

II.    JURISDICTIONAL STATEMENT................................................................8

III.   STATEMENT OF THE ISSUES................................................................10

IV.   STATEMENT OF THE CASE.................................................................11

V.    SUMMARY OF THE ARGUMENT.........................................................14

VI.   ARGUMENT.........................................................................................16

     A.    This Court should dismiss the instant appeal as Plaintiff's opening brief does not comply with the Federal Rules of Appellate Procedure………………………………………………….................16

     B.    Standard of Review……………………………………………17

     C.    The District Court Properly Denied Plaintiff's Motion for Summary Judgment …………….........................................................................19

          1.   Plaintiff does not present sufficient evidence to establish each and every element of the claims asserted against Dr. Clarke...20

               a.    Plaintiff does not establish the objective prong of his claim as his motion is not adequately supported with sufficient, probative evidence that he received constitutionally inadequate care………………….....21

               b.    Plaintiff does not establish the subjective prong of his claim as his motion is not adequately supported with sufficient, probative evidence that Dr. Clarke acted with a reckless disregard to a serious risk of harm………….23

     D.    The District Court Properly Granted Dr. Clarke's Motion for Summary Judgment ……………………... ………………………25

1.      Dr. Clarke adequately supports her motion for summary judgment by demonstrating the absence of evidence necessary to support both the objective and subjective prongs of Plaintiff's claim for deliberate indifference to a serious medical need………………………………………………………………..26

2.      Plaintiff does not rebut Dr. Clarke's motion with probative evidence to raise a genuine issue of material fact……………27

3.      The record of evidence demonstrates Dr. Clarke is entitled to statutory immunity as a disaster response worker……………28

VII.   CONCLUSION...............................................................................29


CERTIFICATE OF SERVICE...................................................................30

CERTIFICATE OF COMPLIANCE..........................................................31

ADDENDUM………………………………………………………………..32

## **TABLE OF AUTHORITIES** [1]

## **CASES**

Arch Specialty Ins. Co. v. Colony Ins. Co., 590 F. Supp. 3d 395 (D. Mass. 2022)………………………………………………………………………19

Aruanno v. Glazman, 316 Fed. Appx. 1994 (3rd Cir. 2009)………………......23

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)………………...18, 19, 26

Benson v. Cady, 761 F. 2d 335 (7th Cir. 1985)……………………………......24

Bradley v. Sugarbaker, 809 F. 3d 8 (1st Cir. 2015)…………………………..26

Burrell v. Hampshire County, 307 F. 3d 1 (1st Cir. 2002)…………………....24

---

[1] Judicial dispositions categorized as "unpublished" per Local Rule 32. 1.0(a) are designated as such with an asterisk (*) preceding the case name.

iii

Celotex Corp v. Catrett, 477 U.S. 317 (1986)………………………...18, 19, 25, 27

*Charest v. Ivey, No. 20-2014, 2022 U.S. Dist. LEXIS 22390 (S.D. Ala. Feb. 7, 2022)……………………………………………………………………………22

Craft v. Regions Mort. Inc., 796 F. Supp. 2d 7 (D. Mass. 2011)………………....18

DesRosiers v. Moran, 949 F. 2d 15 (1st Cir. 1991)…………………………………22, 27

Estelle v. Gamble, 429 U.S. 97 (1976)…………………………………………20, 26, 27

Farmer v. Brennan, 511 U.S. 825 (1994)………………………………………..24, 27

*Flannery v. Bauermeister, No. 06-399, 2007 U.S. Dist. LEXIS 103918 (D.R.I. Dec. 11, 2007)……………………………………………………………………….23

*Flannery v. Bauermeister, No. 06-399, 2007 U.S. Dist. LEXIS 95384 (D.R.I. Dec. 28, 2007)………………………………………………………………………..23

Gallucci v. Humbyrd, 709 A. 2d 1059, 1065 (R.I. 1998)………………………..22

Garside v. Osco Drug, Inc., 895 F. 2d 46 (1st Cir. 1990)………………….18, 19, 25

*Gonzalez-Pagan v. Veterans Affairs Med. Ctr., No. 18-1323, 2020 U.S. App. LEXIS 29955 (1st Cir. June 23, 2020)……………………………………...16, 17

Hughes v. District of Columbia, 425 A. 2d 1299 (D.C. 1981)…………………....25

*Irizarry-Santiago v. Essilor Indus., No. 13-2519, 2015 U.S. App. LEXIS 23372 (1st Cir. June 2, 2015)……………………………………………………………..17

Keiser v. Coliseum Properties, Inc., 614 F. 2d 406 (5th Cir. 1980)…………….....20

King v. Patt, 525 Fed. Appx. 713 (10th Cir. 2013)……………………………..23

iv

Kosilek v. Spencer, 774 F. 3d 63 (1st Cir. 2014)……………………………...21, 27

Leavitt v. Correctional Medical Services, Inc., 645 F. 3d 484 (1st Cir. 2011)……21

Maldanado-Denis v. Castillo-Rodriguez, 23 F. 3d 576 (1st Cir. 1994)…....18, 19, 25

Mays v. Dart, 974 F. 3d 810 (7th Cir. 2020)………………………………………22

McDermott v. Lehman, 594 F. Supp. 1315 (D. Me. 1984)………………………19

Mesnick v. Gen. Elec. Co., 950 F. 2d 816 (1st Cir. 1991)………………………...18

Nunes v. Mass. Dep't of Corr., 766 F. 3d 136 (1st Cir. 2014)……………………18

Peabody Essex Museum, Inc. v. United Fire Ins. Co., 802 F. 3d 39 (1st Cir. 2015)……………………………………………………………………………28

Pearson v. Prison Health Service, 850 F. 3d 526 (3rd Cir. 2017)…………………23

People for the Ethical Treatment of Animals, Inc. v. Tri-State Zoological Park of W.Md., Inc., 397 F. Supp. 3d (D.Md. 2019)………………………………..27

*Phillips v. Hope Vill. Inc., No. 02-0700, 2005 U.S. Dist. LEXIS 10958 (D.D.C. May 31, 2005)………………………………………………………………..24

Rakes v. United States, 352 F. Supp.2d 47 (D. Mass. 2005)……………………...25

Reyes-Garcia v. Rodriguez & Del Valle, 82 F. 3d 11 (1st Cir. 1996)…………16, 17

Rivera v. IRS, 226 F. Supp. 2d 345 (D.P.R. 2022)………………………………18

*Rowley v. City of New Bedford, No. 21-11649, 2023 U.S. Dist. LEXIS 63928 (D. Mass. April 12, 2023)…………………………………………………………23

Rua v. Goldis, 523 F. Supp. 3d 84 (D. Mass. 2014)…………………………..22, 27

Schaffer v. Weast, 546 U.S. 49 (2005)……………………………………………20

Scinto v. Stansberry, 841 F. 3d 219 (4th Cir. 2006)………………………………23

Serapion v. Martinez, 119 F. 3d 982 (1st Cir.1997)………………………………28

Sheeley v. Memorial Hospital, 710 A. 2d 161 (R.I. 1998) ………………………22

Snell v. Neville, 998 F. 3d 474 (1st Cir. 2021)……………………………………17

*Spaddy v. Mass. Appeals Court, No. 19-2093, 2021 U.S. App. LEXIS 14524 (1st Cir. Jan. 7, 2021)……………………………………………………………….17

Stepanischen v. Merchants Despatch Transp. Corp., 722 F.2d 922 (1st Cir. 1983)………………………………………………………………………20

*Stevens v. Lynch, No. 07-277, 2007 U.S. Dist. LEXIS 86682 (D.N.H. Nov. 14, 2007)………………………………………………………………………21

Suarez v. Pueblo Int'l., Inc., 229 F. 3d 49 (1st Cir. 2000)………………………...18

Swain v. Junior, 961 F. 3d 1276 (11th Cir. 2020)……………………………...24, 27

Torraco v. Maloney, 923 F. 2d 231 (1st Cir. 1991)………………………………27

United States v. Derbes, 369 F.3d 579 (1st Cir. 2004)……………………………21

Wilkinson v. Vesey, 110 R.I. 606; 295 A. 2d 676 (1972)………………………...22

Wilson v. Seiter, 501 U.S. 294 (1991)……………………………………………27

Wilson v. Williams, 961 F. 3d 829 (6th Cir. 2020)………………………………..24

## **PROCEDURAL RULES**

District of Rhode Island Local Rule of Civil Procedure 56…………………………28

Federal Rule of Civil Procedure 56……………………………………………...19, 28

Federal Rule of Appellate Procedure 3…………………………………………..9

Federal Rule of Appellate Procedure 4 …………………………………………9

Federal Rule of Appellate Procedure 25………………….……………………16

Federal Rule of Appellate Procedure 28…………………………………………..16

Federal Rule of Appellate Procedure 34……………………………………………8

First Circuit Rule of Appellate Procedure 28……………………………………..16

First Circuit Rule of Appellate Procedure 34………………………………………8

## **STATUTES**

28 U.S.C. §1291……………………………………………………………..10

28 U.S.C. §1331……………………………………………………………………8

42 U.S.C. §1983………………………………………………………………8, 11, 20

R.I. GEN. LAWS § 30-15-15………………………………………………………..29

## I.     REASONS WHY ORAL ARGUMENT NEED NOT BE HEARD

Pursuant to Federal Rule of Appellate Procedure 34(a) and First Circuit Rule 34, Defendant-Appellee Jennifer Clarke, M.D. ("Defendant Clarke" or "Dr. Clarke") submits that oral argument need not be heard in this matter.

Defendant Clarke posits that oral argument is unnecessary in this case under all three standards enumerated in Federal Rule of Appellate Procedure 34(a)(2), namely: this appeal is frivolous; the dispositive issues have been authoritatively decided by the district court below; and, because the facts and legal arguments are adequately presented in the briefs and on the record of this case, this Court's decisional process would not be significantly aided by oral argument. See Fed. R. App. P. 34 (a)(2).

## II.     JURISDICTIONAL STATEMENT

On January 8, 2021, Plaintiff-Appellant Timothy DeBritto ("Plaintiff") initiated a prisoner civil rights action in the United States District Court for the District of Rhode Island. Invoking 42 U.S.C. § 1983, the plaintiff alleged violations of his rights under the Eighth Amendment to the United States Constitution. Pursuant to 28 U.S.C. §1331, the District Court properly exercised original jurisdiction over the civil action arising under provisions of the United States Constitution and federal law. In accordance with the scheduling orders of the District Court, Plaintiff filed a Motion for Summary Judgment on November

8

21, 2022. Defendant Clarke filed a Motion for Summary Judgment on November 30, 2022. Defendants Patricia Coyne-Fague and Lynn Corry (*collectively referred to as* "Corrections Defendants") filed a joint Motion for Summary Judgment on December 1, 2022. Defendant Clarke filed an objection to Plaintiff's motion on December 5, 2022. Plaintiff filed an objection to Corrections Defendants' motion on December 15, 2022. Plaintiff did not file an objection to Defendant Clarke's motion.

On August 1, 2023, the District Court issued a memorandum and order; whereby Plaintiff's Motion for Summary Judgment was denied and Defendant Clarke's and the Corrections Defendants' Motions for Summary Judgment were granted. Subsequent thereto, the District Court entered judgment in favor of all defendants.[2] The entry of judgment on August 1, 2023 effectively disposed of all the claims as to all parties in this case. On August 9, 2023, Plaintiff filed a Notice of Appeal as to the grant of Defendants' Motions for Summary Judgment. *See* Fed. R. App. P. 3; *See* Fed. R. App. P. 4. On August 15, 2023, Plaintiff filed a Motion for Reconsideration as to the grant of Defendants' Motions for Summary Judgment. On August 21, 2023, the District Court denied Plaintiff's Motion for

---

[2] The Corrections Defendants are separately represented and will file their own joint brief. Defendant Clarke expressly incorporates any and all arguments made on behalf of the Corrections Defendants as if fully argued herein, to the extent that the arguments may be deemed applicable.

Reconsideration.[3] Accordingly, and pursuant to 28 U.S.C. § 1291, this Court has jurisdiction over the plaintiff's appeal of the final orders of the District Court granting judgment in favor of all defendants.

### III.    STATEMENT OF THE ISSUES

1.    The instant appeal is subject to summary dismissal as the brief filed by Plaintiff does not conform to the rules of appellate practice, including the local rules of the First Circuit, making evaluation of the merits of Plaintiff's appeal unduly burdensome for this Court and Defendants-Appellees.

2.    The District Court properly denied Plaintiff's Motion for Summary Judgment as Plaintiff failed to present sufficient evidence to establish entitlement to judgment as a matter of law on each and every element of his claim for deliberate indifference to a serious medical need in violation of the Eighth Amendment.

3.    The District Court properly granted Defendant Clarke's Motion for Summary Judgment as the record of evidence did not establish a genuine issue of material fact over which reasonable minds could differ as there was no evidence to support a finding that Defendant Clarke, in her role as Medical Program Director for the Rhode Island Department of Corrections, acted with a reckless disregard to a serious risk of harm resulting in the

_____

[3] As the District Court's denial of Plaintiff's Motion for Reconsideration is not addressed in Plaintiff's appeal, it will not be discussed further.

10

provision of constitutionally inadequate medical care in violation of the Eighth Amendment.

## IV.   <u>STATEMENT OF THE CASE</u>

The facts giving rise to this cause of action against Defendant-Appellee Jennifer Clarke, M.D. ("Dr. Clarke") involve her role in coordinating the response of the Rhode Island Department of Corrections ("DOC") to the novel coronavirus (COVID-19), while Plaintiff-Appellant, Timothy DeBritto was incarcerated at the Adult Correctional Institutes ("ACI") in Cranston, Rhode Island. During the time of the matters alleged in the Amended Complaint, Dr. Clarke was the Medical Program Director of the DOC. *Dr. Clarke's Statement of Undisputed Facts*, *p. 1, ¶2* (District Court Docket 94). In November 2020, the maximum security facility in which Plaintiff was housed experienced an outbreak of COVID-19 amongst both inmates and correctional staff. *Id., p. 3, ¶14* (District Court Docket 94) Plaintiff tested positive for the presence of COVID-19 on November 23, 2020. *Id., p. 4, ¶18*

The Original Complaint was filed pursuant to 42 U.S.C. § 1983 on January 8, 2021, alleging violations of Plaintiff's Eighth Amendment rights to be free from cruel and unusual punishment. *Complaint* (District Court Docket 1). On April 14, 2021, Plaintiff filed a Motion to Amend, requesting leave to amend his complaint in order to assert his claims against the named defendants in both their individual and official capacities. *Motion to Amend* (District Court Docket 10). The District

Court granted Plaintiff's motion, entering the Amended Complaint on May 25, 2021. *Text Order 5/25/2021; Amended Complaint* (District Court Docket 18/18-1). The Amended Complaint was served on Dr. Clarke on June 22, 2021. Plaintiff alleged that Dr. Clarke, in her role as Medical Program Director, failed to develop, implement, and/or ensure compliance with policies for managing COVID-19 in a congregate care setting consistent with the guidance issued by the Centers for Disease Control ("CDC"). *Id.* Plaintiff alleged specifically that Dr. Clarke failed to adequately isolate and/or quarantine individuals testing positive for COVID-19, and that she failed to ensure Plaintiff received adequate medical care once he tested positive for COVID-19. *Id.*

On November 21, 2022, Plaintiff filed a Motion for Summary Judgment, asserting that no genuine issues of material fact existed such that judgment was warranted in his favor against all defendants as a matter of law. *Plaintiff's Motion for Summary Judgment* (District Court Docket 92). Plaintiff supported his motion with an eight (8) page affidavit and thirty-eight (38) pages of exhibits. *Plaintiff's Affidavit in Support of Material Facts Supporting Plaintiff's Motion for Summary Judgment Authorized by Rule 56(c)* (District Court Docket 92-1); *Exhibits A-K* (District Court Docket 92-2). On December 5, 2022, Dr. Clarke filed an opposition to Plaintiff's motion, arguing, *inter-alia*, that Plaintiff failed to meet the burden of proof as he did not present sufficient evidence to establish the subjective

component of his claim for deliberate indifference to a serious medical need against Dr. Clarke as either an individual actor or in her supervisory capacity. *Dr. Clarke's Response to Plaintiff's Motion for Summary Judgment* (District Court Docket 97). Corrections Defendants filed their joint objection to Plaintiff's motion on December 5, 2022. *Corrections Defendants' Objection to Plaintiff's Motion for Summary Judgment* (District Court Docket 98).

On November 30, 2022, Dr. Clarke filed her Motion for Summary Judgment, asserting that the record of evidence was such that no reasonable jury could find in Plaintiff's favor, and therefore judgment as a matter of law was warranted. *Dr. Clarke's Motion for Summary Judgment* (District Court Docket 93). Additionally, Dr. Clarke asserted entitlement to statutory immunity as a disaster response worker. *Id*. In support of her motion, Dr. Clarke filed a Statement of Undisputed Facts and nine (9) exhibits. (District Court Docket 94). The Corrections Defendants filed a Joint Motion for Summary Judgment on December 1, 2022 *Corrections Defendants' Motion for Summary Judgment* (District Court Docket 95). Plaintiff filed a response on December 15, 2022, specifying therein that his objection was *only* asserted as to the Corrections Defendants. *See Plaintiff's Objection, p. 1* (District Court Docket 101). Plaintiff did not file any response to Dr. Clarke's motion for summary judgment.

13

On August 1, 2023, the District Court entered a Memorandum and Order denying Plaintiff's motion, and simultaneously granting summary judgment in favor of Dr. Clarke and the Corrections Defendants. *Memorandum and Order* (District Court Docket 105). In its analysis, the District Court found that the record of evidence did not support a finding of deliberate indifference on the part of Dr. Clarke or the Corrections Defendants, thereby preventing Plaintiff from establishing the subjective prong of his claim for Eighth Amendment violations. *Id*. Additionally, the District Court held that there was no evidence in the record to support Plaintiff's claim of inadequate medical treatment, let alone evidence sufficient to elevate a claim of negligence/medical malpractice to one of deliberate indifference.[4] *Id*. An Order of the District Court granting judgment in favor of all defendants entered the same day. *Judgment* (District Court Docket 106). Plaintiff filed a timely notice of appeal on August 9, 2023. (District Court Docket 107).

Plaintiff's appeal is now before this Court.

## V.　SUMMARY OF THE ARGUMENT

The present appeal is subject to summary dismissal as the Plaintiff's opening brief fails to comply with the applicable rules of appellate procedure. The five (5) page document lacks a table of contents, a table of authorities, and an addendum; presenting an entirely undeveloped argument without citations to the record of

---

[4] The District Court did not address Dr. Clarke's affirmative defense of statutory immunity.

evidence or underlying docket entries. These substantial violations of the procedural rules place an undue burden on both this Court and the Defendants in their efforts to understand, analyze, and form a meaningful response to the legal and factual bases of Plaintiff's appeal.

The District Court's denial of Plaintiff's Motion for Summary Judgment should be affirmed as he fails to show the record of evidence is such that a reasonable jury could only find in his favor on each and every element of his claim of deliberate indifference to a serious medical need in violation of the Eighth Amendment. Plaintiff's reliance on his own allegations and legal conclusions, absent admissible evidence to support them, is insufficient to establish entitlement to judgment as a matter of law.

The District Court's grant of Dr. Clarke's Motion for Summary Judgment should be affirmed as the entire record of evidence, even when viewed in a light most favorable to Plaintiff, is insufficient to sustain Plaintiff's burden of proof on each and every element of the claim for deliberate indifference to a serious medical need in violation of the Eighth Amendment. Plaintiff presents no evidence that he was either denied medical care or that the medical care received was so inadequate, when compared to the professional standards of care, that it constituted deliberate indifference, nor does he present evidence that Dr. Clarke acted with a reckless disregard to the serious risk of harm posed by the COVID-19 virus. Additionally,

absent evidence to support a finding that Dr. Clarke's involvement in coordinating the response of the Rhode Island Department of Corrections to the COVID-19 pandemic was the result of bad faith, gross negligence, or willful misconduct, Dr. Clarke is shielded from civil liability as a disaster response worker.

## VI.    ARGUMENT

A.    This Court should dismiss the instant appeal as Plaintiff's opening brief does not comply with the Federal Rules of Appellate Procedure

This Court should summarily dismiss Plaintiff/Appellant's appeal as his opening brief fails to conform to the numerous technical and substantive requirements delineated in the applicable procedural rules. *See* Reyes-Garcia v. Rodriguez & Del Valle, 82 F.3d 11, 15 (1st Cir. 1996) (holding that persistent noncompliance with appellate rules is sufficient cause to dismiss an appeal). Plaintiff's opening brief, consisting of a mere five (5) pages, does not contain a table of contents, a table of authorities, citations to the record, any meaningfully developed argument, or an addendum.[5] Fed. R. App. P. 28(a)(2),(3),(6),(8)(a); 1st Cir. Loc. R. 28.0.  Such substantial non-compliance with the procedural rules thwarts the efforts of this Court to "assemble the raw material that is essential for forging enlightened decisions." Gonzalez-Pagan v. Veterans Affairs Med. Ctr., No.

---

[5] Dr. Clarke further notes that Plaintiff's brief violates Fed. R. App. P.  25(b), as it was not served upon counsel in a manner proscribed by Fed. R. App. P.  25(c), and, as such, fails to contain a certificate of service as required by Fed. R. App. P. 25(d).

18-1323, 2020 U.S. App. LEXIS 29955 at *6 (1st Cir. June 23, 2020)(*quoting* Reyes-Garcia at 14). When "procedural noncompliance nullifies effective appellate review," this Court is "precluded from deciding the merits of an appeal, and summary disposition is appropriate." Id. at *4-5.

This Court does not consist of "mind readers, so parties must spell out their issues clearly, highlighting the relevant facts and analyzing on-point authority." Id. at *4 (*internal citations omitted*). Even taking into account Plaintiff's *pro se* status, his opening brief fails "to develop any coherent argument," thereby requiring a "tremendous amount of guess work" to evaluate the factual and legal basis for the appeal. Id. at *6-7; Spaddy v. Mass. Appeals Court, No. 19-2093, 2021 U.S. App. LEXIS 14524 at *2 (1st Cir. Jan. 7, 2021); Irizzary-Santiago v. Essilor Indus., No. 13-2519, 2015 U.S. App. LEXIS 23372 at *1 (1st Cir. June 2, 2015). Dr. Clarke is therefore unduly burdened with guesswork in attempting to discern the basis for Plaintiff/Appellant's appeal and filing a responsive brief sufficient to provide this Court with the entire framework necessary for full appellate review. *See e.g.* Gonzalez-Pagan, 2020 U.S. App. LEXIS 29955 at *6-7.

B.    Standard of Review

When a party appeals an unfavorable grant of summary judgment, this Court undertakes a *de novo* review, examining "the entire record afresh to determine whether the law required the moving party – here the defendants – to win." Snell v.

Neville, 998 F.3d 474, 486 (1ˢᵗ Cir. 2021)(*referencing* Nunes v. Mass. Dep't of Corr., 766 F.3d 136, 142 (1ˢᵗ Cir. 2014). The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Craft v. Regions Mortg. Inc., 796 F. Supp. 2d 7, 9 (D. Mass. 2011)(*citing* Mesnick v. Gen. Elec. Co., 950 F. 2d 816, 822 (1st Cir. 1991) (*quoting* Garside v. Osco Drug, Inc., 895 F. 2d 46, 50 (1st Cir. 1990))). The party moving for summary judgment has the burden of demonstrating that there is no genuine issue of material fact, and they are therefore entitled to judgment as a matter of law. Maldonado-Denis v. Castillo-Rodriguez, 23 F. 3d 576, 581 (1ˢᵗ Cir. 1994)(*quoting* Garside at 48(*citing and quoting,* inter alia, Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986) and Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250. (1986))). To satisfy this burden, the moving party *must* establish that the record of evidence not only supports their version of the facts, but that the evidence is *so* one-sided that a reasonable jury could *never* find for the non-moving party. Anderson at 248. (*emphasis added*). If the moving party satisfies its burden with a properly supported motion, the burden then shifts to the non-moving party to present sufficient, probative evidence which demonstrates a material fact is disputable. Rivera v. IRS, 226 F. Supp. 2d 345, 347 (D.P.R. 2022)(*citing* Suarez v. Pueblo Int'l, Inc., 229 F. 3d 49 (1st Cir. 2000)). The party opposing summary

18

judgment may not rely merely on the allegations or denials in their own pleadings.

*See* Fed. R. Civ. P. 56(e)(2).

> "The summary judgment pleading standard is the same where, as here, both parties have moved for summary judgment…The fact that both parties have moved for summary judgment on the same issues, neither dilutes nor distorts  the summary judgment standard of review…When courts are considering cross-motions for summary judgment, they must consider each motion separately, drawing all inferences in favor of each non-moving party in turn…Cross-motions for summary judgment do not alter the summary judgment standard, but instead simply require the Court to determine whether either of the parties deserves judgment as a matter of law on the facts that are not disputed...The Court must in each instance determine whether the moving party has met its burden under Rule 56.

Arch Specialty Ins. Co. v. Colony Ins. Co., 590 F. Supp. 3d 395, 410 (D. Mass.

2022) (*internal quotations and citations omitted*).

### C.    The District Court Properly Denied Plaintiff's Motion for Summary Judgment

The District Court's denial of the plaintiff's motion should be affirmed as

Plaintiff does not point to a record of evidence sufficient to sustain his burden of

proof as the party moving for summary judgment. *See e.g.* McDermott v. Lehman,

594 F. Supp. 1315, 1320 (D. Me. 1984)("Where the evidentiary matter in support

of the motion does not establish the absence of a genuine issue, summary judgment

must be denied…"); *see also* Maldonado-Denis, 23 F. 3d at 581; Garside, 895 F.

2d at 48; Celotex Corp., 477 U.S. at 325; Anderson 477 U.S. at 250. It was the

duty of the District Court to consider the entire record and determine whether or

not the plaintiff presented sufficient evidence to support his position of entitlement to judgment as a matter of law. <u>Stepanischen v. Merchants Despatch Transp. Corp</u>., 722 F. 2d 922, 929, 930(1st Cir. 1983)(*referencing* <u>Keiser v. Coliseum Properties, Inc</u>., 614 F. 2d 406, 410 (5th Cir. 1980)("a court can only enter a summary judgment if everything in the record -- pleadings, depositions, interrogatories, affidavits, etc. – demonstrates that no genuine issue of material fact exists"). This required the plaintiff, as the ultimate bearer of the burden of proof, to present sufficient, admissible, and undisputable evidence as to each and every element of the claims he asserts against Dr. Clarke. *See e.g.* <u>Schaffer v. Weast</u>, 546 U.S. 49, 56 (2005).

1. <u>Plaintiff does not present sufficient evidence to establish each and every element of the claims asserted against Dr. Clarke</u>

Plaintiff's claims are brought pursuant to 42 U.S.C. § 1983, alleging a violation of his Eighth Amendment right to be free from cruel and unusual punishment through actions amounting to deliberate indifference to a serious medical need. *See Amended Complaint* (District Court Docket 18); <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976). To meet his burden of proof, the plaintiff must present sufficient, probative evidence to establish both the objective prong and the subjective prong of his claim. <u>Estelle</u> at 106. Objectively, there must be evidence to establish a sufficiently serious medical need for which the plaintiff received constitutionally inadequate care. *See* <u>Kosilek v. Spencer</u>, 774 F. 3d 63, 91 (1st Cir.

2014). Subjectively, the evidence must show that the inadequate care was the result of Dr. Clarke's wanton and reckless disregard to a known, easily preventable, impending harm. Leavitt v. Correctional Medical Services, Inc. 645 F. 3d 484, 497 (1st. Cir. 2011). As Plaintiff does not present a record of evidence to establish both prongs of his claim for deliberate indifference to a serious medical need, he is not entitled to summary judgment.

    a.    <u>Plaintiff does not establish the objective prong of his claim as his motion is not adequately supported with sufficient, probative evidence that he received constitutionally inadequate medical care</u> [6,7]

Plaintiff fails to meet his burden of proof as he does not point to a record of evidence establishing that the medical care received, including the overall management of the COVID-19 pandemic by the DOC, fell below the standard of care and was therefore inadequate. Stevens v. Lynch, No. 07-cv-277, 2007 U.S. Dist. LEXIS 86682 *10 (D.N.H. November 14, 2007); Kosilek, 774 F. 3d at 82 (referencing United States v. Derbes, 369 F. 3d 579, 583 (1st Cir. 2004)(medical services provided to prisoners must on a "level reasonably commensurate with

_____

[6] The term "medical care", in this matter, includes not only direct care provided by licensed medical professionals, but the overall response of the DOC in attempting to manage and/or control the spread of COVID-19 at the ACI in 2020 as this amounts to management of a medical condition.

[7] For the purposes of this appeal only, Dr. Clarke will agree with the District Court's holding that COVID-19 poses a substantial risk of serious harm sufficient to satisfy the "serious medical need" portion of the objective prong of a claim for deliberate indifference.

modern medical science and of a quality acceptable within prudent professional standards"). Plaintiff's assertion that the medical care was inconsistent with the guidelines promulgated by the CDC, and as a result he contracted COVID-19 does not establish either a standard of care or a breach thereof. *Pl. Brief, p. 3-4*; Charest v. Ivey, No. 20-2014, 2022 U.S. Dist. LEXIS 22390 at *40 (S.D.Ala. Feb. 7, 2022)(*referencing* Mays v. Dart, 974 F. 3d 810, 823 (7th Cir, 2020)(*cert. denied*)(administrative guidelines do not establish a standard of care). While it is certainly unfortunate that Plaintiff contracted COVID-19, that fact alone is not sufficient to establish the medical care he received was inadequate. Rua v. Goldis, 523 F. Supp. 3d 84, 96 (D. Mass 2014)("The fact that the plaintiff continued to experience discomfort does not indicate that he received inadequate medical treatment").

Plaintiff must first establish a standard of care for management of the COVID-19 pandemic in a correctional facility with the same or similar characteristics of the maximum security facility at the ACI in October and November, 2020. *See* DesRosiers v. Moran, 949 F. 2d 15, 19 (1st Cir. 1991)(adequacy of conditions must taken into account "practical constraints facing prison officials"); Sheeley v. Memorial Hospital, 710 A. 2d 161 (R.I. 1998); Gallucci v. Humbyrd, 709 A. 2d 1059, 1065 (R.I. 1998); Wilkinson v. Vesey, 110 R.I. 606, 295 A. 2d 676, 682 (1972) (a defendant's actions "must be evaluated in

the light of all of the facts and circumstances with which he or she was confronted at the time and not in consideration of what hindsight has revealed as the proper course of action"). The evidence establishing a standard of care must consist of opinion testimony from a qualified expert. King v. Patt, 525 Fed. Appx. 713, 722 (10th Cir. 2013); Scinto v. Stansberry, 841 F. 3d 219, 230 (4th Cir. 2006); Aruanno v. Glazman, 316 Fed. Appx. 1994, 196 (3d Cir. 2009); Pearson v. Prison Health Service, 850 F. 3d 526, 536 (3rd Cir. 2017). Logically, absent evidence to establish a standard of care, there is no basis on which a finder of fact could evaluate the adequacy of the medical care provided to determine whether or not a breach of the standard occurred. *See e.g* Flannery v. Bauermeister, No. 06-399, 2007 U.S. Dist. LEXIS 103918 *6-7 (D.R.I. Dec. 11, 2007)(*adopted by* Flannery v. Bauermeister, No. 06-399, 2007 U.S. Dist. LEXIS 95384 (D.R.I. Dec. 28, 2007)). As Plaintiff does not support his motion with testimony of an expert, he fails to meet the burden of proof necessary establish the medical care received was inadequate. Rowley v. City of New Bedford, No. 21-11649, 2023 U.S. Dist. LEXIS 63928 at *26 (D. Mass. April 12, 2023)(the adequacy of care provided was a question of fact, requiring expert testimony, warranting denial of the plaintiff's motion for summary judgment).

   b. Plaintiff does not establish the subjective prong of his claim as his motion is not adequately supported with sufficient, probative evidence that Dr. Clarke acted with a reckless disregard to a serious risk of harm

Plaintiff fails to meet his burden of proof to demonstrate deliberate indifference as he does not point to a record of evidence establishing that Dr. Clarke's actions constituted a wanton and reckless disregard to a substantial risk of serious harm. <u>Swain v. Junior</u>, 961 F. 3d 1276, 1285 (11th Cir. 2020); <u>Farmer v. Brennan</u>, 511 U.S. 825, 836 (1994). Plaintiff's assertion that the recommendations made by Dr. Clarke were inconsistent with the guidelines promulgated by the CDC, and as a result he contracted COVID-19 is not sufficient to establish deliberate indifference. *Pl. Brief, p. 4*; <u>Swain</u> at 1287 (*referencing* <u>Wilson v. Williams</u>, 961 F. 3d 829 (6th Cir. 2020)(prison was not deliberately indifferent because efforts were not successful in preventing the spread of COVID-19)). To satisfy his burden as the moving party, the plaintiff must establish, with probative evidence, that Dr. Clarke's efforts and recommendations constituted "highly unreasonable conduct or a gross departure from ordinary in a situation where a high degree of danger is apparent." <u>Benson v. Cady</u>, 761 F. 2d 335, 339 (7th Cir. 1985)(*internal references omitted*); *see also* <u>Farmer</u> at 1982-83; <u>Burrell v. Hampshire County</u>, 307 F. 3d 1, 7 (1st Cir. 2002). The evidence necessary to demonstrate Dr. Clarke's efforts were not a reasonable response to a serious risk of harm must, once again, come in the form of expert testimony. <u>Phillips v. Hope Vill., Inc</u>., No. 02-0700, 2005 U.S. Dist. LEXIS 10958 at *14-15 (D.D.C. May 31, 2005)(*quoting* <u>Hughes v. District of Columbia</u>, 425 A. 2d 1299, 1303 (D.C. 1981)).

24

As Plaintiff does not provide expert opinion testimony, he cannot establish the subjective prong of his claim for deliberate indifference.

> D.    The District Court Properly Granted Dr. Clarke's Motion for Summary Judgment

The District Court's grant of judgment in favor of Dr. Clarke should be affirmed as the record demonstrates an absence of evidence to support the plaintiff's case. *See* Rakes v. United States, 352 F. Supp.2d 47, 52 (D. Mass. 2005)(*quoting* Celotex Corp. at 325). In undertaking *de novo* review, this Court analyzes the record with due regard to the burden of proof applicable to each respective party:

> "The movant must put the ball in play, averring an absence of evidence to support the nonmoving party's case. The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material. A genuine issue is one that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party. Put another way, a genuine issue exists if there is *sufficient evidence supporting the claimed factual dispute* to require a choice between the parties' different versions of the truth at trial.  A material issue is one that affects the outcome of the suit, that is, and issue which, perforce, needs to be resolved before the related legal issues can be decided."

Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994) (*quoting* Garside v. Osco Drug, Inc., 895 F.2d 46, 48)(*emphasis added*)(*internal quotations and additional citations omitted*). As Plaintiff does not present this Court with sufficiently probative evidence to demonstrate a genuine issue of material fact such that reasonable minds could differ, there is no issue which

requires submission to a finder-of-fact and judgment in favor of Dr. Clarke is appropriate. Anderson, 477 U.S. at 249-50 (where the non-moving party's evidence is merely colorable, or is not significantly probative, then no genuine dispute as to a material fact has been demonstrated and summary judgment may be granted).

1.    Dr. Clarke adequately supports her motion for summary judgment by demonstrating the absence of evidence necessary to support both the objective and subjective prongs of Plaintiff's claim for deliberate indifference to a serious medical need

Dr. Clarke points this Court to an extensive record of evidence from which no reasonable finder of fact could conclude the doctor exhibited deliberate indifference to the Plaintiff's serious medical needs in violation of the Eight Amendment. Anderson, 477 U.S. at 248; Estelle, 429 U.S. at 106-107. As discussed above, not only is the absence of expert testimony detrimental to Plaintiff's Motion for Summary Judgment, as a matter of law he cannot establish that the medical care provided was inadequate when compared to professional standards in satisfaction of the objective prong. See Bradley v. Sugarbaker, 809 F.3d 8, 16 (1st Cir. 2015)(expert testimony is needed to establish the objective standard of care by which a finder of fact can measure the adequacy of care received); see also Kosilek v. Spencer, 774 F.3d 63, 85 (1st Cir. 2014); Estelle at 105-6. Similarly, absent expert testimony to establish what would be expected of

Dr. Clarke, again a standard of care, the plaintiff, as a matter of law, cannot establish that the actions taken by Dr. Clarke were not only inadequate or unreasonable, but so inadequate or unreasonable as to constitute a reckless disregard to a grave risk of harm. *See* DesRosiers at 19 (1st Cir. 1991)(*citing* Wilson v. Seiter, 501 U.S. 294 (1991)); Swain, 961 F.3d at 1287; Farmer, 511 U.S. at 844. Where there is "no evidence of treatment so inadequate as to shock the conscience, let alone that any deficiency was intentional…summary judgment is appropriate." Rua at 97 (*quoting* Torraco v. Maloney, 923 F. 2d 231, 234 (1st Cir. 1991)).

2.   Plaintiff does not rebut Dr. Clarke's motion with probative evidence to raise a genuine issue of material fact

Plaintiff fails to make a showing sufficient to establish the existence of the elements essential to his case and therefore cannot overcome Dr. Clarke's motion for summary judgment. *See* People for the Ethical Treatment of Animals, Inc. v. Tri-State Zoological Park of W.Md., Inc., 397 F. Supp. 3d 768, 774 (D. 2019) (19)(*quoting* Celotex Corp., 477 U.S. at 322). Plaintiff argues that his complaint and affidavit "squarely" contradict the "defendants' story," as his affidavit constitutes a "declaration under the penalty of perjury" and as such establishes, at a minimum, a genuine issue of material fact. *Pl. Brief, p. 2-4*; *Affidavit, p. 7* (District

27

Court Docket 92-1).[8] However, "a party opposing summary judgment may not rely merely on the allegations or denials in their own pleadings." *See* Fed. R. Civ. P. 56(e)(2). As the District Court pointed out, "the governing facts are not in dispute…the contest here concerns the adequacy of the DOC response." *Memorandum & Order, p. 5* (District Court Docket 105). Plaintiff's allegations and legal conclusions, even if contained in a sworn affidavit, are not properly documented facts, and must be ignored. *See e.g.* Serapion v. Martinez, 119 F. 3d 982, 987 (1st Cir.1997)(the court should consider all properly documents facts, but may ignore unsupported conclusions).

> 3.   The record of evidence demonstrates Dr. Clarke is entitled to statutory immunity as a disaster response worker

Although the District Court did not address Dr. Clarke's affirmative defense of statutory immunity, this Court may nonetheless affirm judgment on this ground based on its own analysis of the record. Peabody Essex Museum, Inc. v. United Fire Ins. Co., 802 F. 3d 39, 43 (1st Cir. 2015). The material facts and supporting evidence establishing Dr. Clarke's right to statutory immunity are not disputed by Plaintiff. *See Dr. Clarke's Statement of Undisputed Facts* (District Court Docket 94, et. seq.); D.R.I. LR Cv 56(a)(3). Dr. Clarke, in her role as Medical Program Director for the Rhode Island Department of Corrections, was "complying with, or

---

[8] Dr. Clarke assumes the affidavit submitted by the plaintiff in support of his motion for summary judgment is what he refers to as the plaintiff did not cite to the record.

reasonably attempting to comply with," precautionary measures set forth in an effort to curtail the spread of COVID-19 in a correctional facility. *See* R.I. GEN. LAWS § 30-15-15(a). The record does not overcome Dr. Clarke's right to statutory immunity as a disaster response worker as there is no evidence to support a finding of "willful misconduct, gross negligence, or bad faith." *Id*. As a matter of law, Dr. Clarke cannot be found liable for Plaintiff's injuries and the District Court's entry of judgment in Dr. Clarke's favor must be affirmed.

## VII.  <u>CONCLUSION</u>

For the foregoing reasons, Defendant-Appellee Jennifer Clarke, M.D., respectfully requests that this Honorable Court summarily dismiss Plaintiff-Appellant's appeal. Should this Court defer summary dismissal, Defendant-Appellee Jennifer Clarke, M.D., respectfully requests that this Honorable Court affirm the District Court's denial of Plaintiff-Appellant's Motion for Summary Judgment; affirm the District Court's grant of her Motion for Summary Judgment, and dismiss Plaintiff-Appellant's appeal in this matter.

Respectfully submitted,

**DEFENDANT/APPELLEE**
**JENNIFER CLARKE**

By Her Attorneys,

**TATE & LATHAM LLC**

/s/ Christine A. Stowell
/s/ Jeffrey G. Latham
Jeffrey G. Latham, Esquire [USCA # 81218]
Christine A. Stowell, Esquire [USCA #1196623]
40 Westminster Street, Suite 350
Providence, RI 02903
401.421.7400   401.351.3239 [Fax]
jlatham@tatelawri.com
cstowell@tatelawri.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of January, 2024, I filed the within document via the ECF filing system and that a copy is available for viewing and downloading by counsel of record. I have also caused a true copy of the within to be mailed, postage prepaid, to the following:

***Legal Mail/Confidential***

Timothy DeBritto, *pro se*
*133689*
High Security Center
P.O. Box 8200
Cranston, RI   02920

  /s/ Christine A. Stowell, Esq.

## Certificate of Compliance With Rule 32(a)

Certificate of Compliance With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

☑ this brief contains 5,210 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

this brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

☑ this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2010 in 14 point font Times New Roman , *or*

this brief has been prepared in a monospaced typeface using
_____

  /s/ Jeffrey G. Latham_____
Attorney for Defendants - Appellees
Dated:  December 20, 2023

<u>**A**DDENDUM</u>

## <u>TABLE OF CONTENTS</u>

Memorandum and Order………………….………………………………………..1

Judgment……………………..………………………………………………18

Plaintiff's Affidavit…………………………………………………………..19

Dr. Clarke's Statement of Undisputed Facts…………………………………...27

Dr. Clarke's Affidavit……………………………………………………..30

Rhode Island General Laws §30-15-15………………………………………...33

First Circuit Court of Appeals Rulebook (Rule 25 and Rule 28)…………………34

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| TIMOTHY DeBRITTO, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:21-cv-00017-MSM |
| | ) | |
| PATRICIA COYNE-FAGUE, | ) | |
| DIRECTOR, DEPT. OF CORRECTIONS, | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM & ORDER

Mary S. McElroy, United States District Judge.

## I.    INTRODUCTION

On March 9, 2020, the Governor of the State of Rhode Island declared a state of emergency caused by the appearance in Rhode Island of documented cases of the horrifically contagious and dangerous COVID-19 virus. *See* Executive Order 20-02, governor.ri.gov/documents/orders/Executive-Order-20-02.pdf. On March 11, the World Health Organization declared COVID-19 a global pandemic. https://www. statnews.com/2020/03/11/who-declares-the-coronavirus-outbreak-a-pandemic/. And, on March 13, 2020, a national emergency was declared. Pres. Proc. No. 9994, 85 FR 15337, 2020 WL 1272563 (Pres.).

Congregant residential settings, in particular nursing homes and prisons, were quickly identified as locations presenting a unique and high risk of contagion. As the infection spread throughout the United States (and the World), it seemed to sweep even more quickly through residential settings such as those, where inhabitants lacked the means, physical ability, or freedom to remove themselves from close confinement with each other. As the COVID-19 infection traveled through Rhode Island, it spread through one of its prisons as well. By May 26, 2020, 47 inmates out of 523 at the (private federal) Wyatt Detention Center "Wyatt" in Central Falls, Rhode Island, were testing positive for the virus, resulting in 32 then-active cases of COVID. *Yanes v. Martin,* 464 F. Supp. 3d 467, 472 n.7 (D.R.I. 2020). "Congregate living, such as nursing homes, cruise ships, aircraft carriers, and that at Wyatt and other detention facilities and prisons, magnifies the risk of contracting COVID-19." *Medeiros v. Martin*, 458 F. Supp. 3d 122, 125 (D.R.I. 2020). *See* Center for Disease Control and Prevention ("CDC") *Megan Wallace et al., "COVID-19 in Correctional and Detention Facilities – United States, February-April 2020* ("CDC Detention Report") (May 15, 2020).

The plaintiff, Timothy DeBritto, was then an incarcerated inmate at the state's Maximum-Security prison at the Adult Correctional Institutions ("ACI"), in Cranston, Rhode Island, about eleven miles south of Wyatt. Unlike Wyatt, however, the ACI had no known cases in Maximum Security in those early days. It was not until October 31, 2020, six months after the declaration of emergency, that the first inmate in that facility tested positive. (ECF No. 101- 1, Clarke Affidavit at ¶ 6.) Mr.

5. On or about March 10, 2020, Dr. Clarke prepared a detailed synopsis of recommendations for screening, testing, quarantine, and isolation of both inmates and RIDOC staff. *See* coronavirus 3-10-20.docx, attached to Plaintiff's Motion for Summary Judgment as Exhibit B, ECF 79-1, pp. 11-18.

6. On April 22, 2020, Dr. Clarke outlined the vulnerabilities and mitigation efforts for each of the six (6) housing facilities at the ACI; Max housed inmates in single cells with open bar doors. *See* Email Correspondences of Dr. Clarke, attached as Exhibit 2, p. 1-2.

7. On October 15, 2020, Dr. Clarke recognized that RIDOC staff members were coming to work while symptomatic, recommending a "very strong and clear message" concerning proper protocols for RIDOC staff. Exhibit 2, p. 3-4.

8. On October 23, 2020, Dr. Clarke made recommendations for staff members with a goal of reducing the spread of COVID-19, including treating quarantined inmates as positive cases, limiting contact, and the use of full PPE. Exhibit 2, p 5.

9. On October 25, 2020, Dr. Clarke made additional recommendations after touring the High Security Facility ("HS"). Exhibit 2, p. 6-7. These recommendations provided additional details for reducing the spread of COVID-19, including restricted movement and minimal contact between inmates. Id. Dr. Clarke made these recommendations after only five (5) confirmed cases in the High Security facility. Id.

10. On October 31, 2020, the Prudence-1 cell block was placed on quarantine per Dr. Clarke's recommendations. *See* Inter-Office Memo, ECF 17, p. 3.

DeBritto, who resided in the same Prudence-1 cellblock as the inmate testing positive, tested positive on November 13, 2020.   He ultimately contracted COVID-19 and it is undisputed that he suffered a bout of the disease.[1]

Mr. DeBritto has filed this action under 42 U.S.C. § 1983, contending that the response of the three defendants – Patricia Coyne-Fague, the Director of the Rhode Island Department of Corrections ("DOC"), Jennifer Clarke, DOC's medical director, and Lynne Corry, the Warden of Maximum Security – was inadequate and demonstrated a reckless indifference to his right under the Eighth Amendment of the United States Constitution to be protected from known risks to his physical health. He maintains that he contracted COVID-19 as a direct result of that constitutional violation.

The plaintiff and all three defendants have filed Motions for Summary Judgment (ECF No. 92, 93, 95.)[2]  The Court concludes, as explained below, that there is no genuine issue of material fact and that the defendants are entitled to summary judgment.

## II.   STANDARD OF REVIEW

[1] He contends that as of the date of his complaint, he continues to suffer COVID-19 symptoms, and it is well-documented that the coronavirus can cause symptoms long into the future.   https://www.cdc.gov/coronavirus/2019-ncov/long-term-effects/index. html.  Because of the Court's disposition of the pending motions, the extent of Mr. DeBritto's injury and illness need not be addressed.

[2] Defendant Clarke has argued that Mr. DeBritto's Motion should be denied because it was unaccompanied by a Memorandum and Statement of Undisputed Facts as the Court had advised in a text order of Aug. 22, 2022.  That is true but, in the Court's opinion, not an adequate basis to deny his Motion when, as a *pro se* litigant, he has otherwise made his argument and his view of the facts clear.

The parties have filed Cross-Motions for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Summary judgment's role in civil litigation is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Garside v. Osco Drug Inc.,* 895 F.2d 46, 50 (1st Cir. 1990) (quoting Fed. R. Civ. P. 56(e) Advisory Committee Notes).  Summary judgment can be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." *Santiago–Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 52 (1st Cir. 2000) (quoting *Sanchez v. Alvarado,* 101 F.3d 223, 227 (1st Cir. 1996)).

In ruling on a Motion for Summary Judgment, the court must examine the record evidence "in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party." *Feliciano de la Cruz v. El Conquistador Resort & Country Club,* 218 F.3d 1, 5 (1st Cir. 2000) (citing *Mulero–Rodriguez v. Ponte, Inc.,* 98 F.3d 670, 672 (1st Cir. 1996)).  "[W]hen the facts support plausible but conflicting inferences on a pivotal issue in the case, the judge may not choose between those inferences at the summary judgment stage." *Coyne v. Taber Partners I,* 53 F.3d 454, 460 (1st Cir. 1995).  Furthermore, "[s]ummary judgment is not appropriate merely because the facts offered by the moving party seem most plausible, or because

the opponent is unlikely to prevail at trial. … If the evidence presented 'is subject to conflicting interpretations, or reasonable [people] might differ as to its significance, summary judgment is improper.'" *Gannon v. Narragansett Elec. Co.,* 777 F. Supp. 167, 169 (D.R.I. 1991) (citing and partially quoting 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice & Procedure Civil,* § 2725, at 104 (1983)).

## III.  DISCUSSION

### A.  Record

The governing facts are not in dispute.  Both the DOC defendants and Mr. DeBritto have submitted materials that demonstrate that the contest here concerns the adequacy of the DOC response, not the historical record of what steps were taken. Mr. DeBritto did not file a response to the Statements of Undisputed Facts the defendants filed (ECF Nos. 94, 96), but he did file an Affidavit stating the facts as he professes them to be (ECF No. 79.)  The facts about the health risks presented by COVID-19, and such matters as the guidance of the CDC, are not in dispute (ECF No. 92); the facts about what steps were taken by those in charge of the ACI come primarily from affidavits of correctional officials upon which both the plaintiff and defendants rely.  (ECF No. 101-1.)

At all relevant times, Mr. DeBritto was confined in cellblock Prudence-1 in Maximum Security.  That cellblock consisted of three tiers of single-inmate, open-front cells.  (ECF No. 101-1, Kane Affidavit at 3.)  There are eight cellblocks in the Maximum-Security facility.  *Id.,* Kane Affidavit at 6.  On October 31, 2020, just after the first positive result at Maximum Security was reported, Prudence-1 was put into

a fourteen-day quarantine. (ECF No. 93-1, at 2.) Nonetheless, by November 13, 2020, nearly sixty inmates in Maximum Security had tested positive and the entire facility was put into quarantine. *Id.* Testing was widespread, but it generally took two days to obtain test results. (ECF No. 101-1, Kane Affidavit at 1.)

High-level correctional staff were meeting frequently with medical staff. Warden Corry declared she met with the Medical Director and other DOC officials about the November outbreak about 50 times. *Id.*, Corry Affidavit at 9. Director Coyne-Fague was meeting with Clark or other healthcare officials multiple times per day, every day. *Id.*, Coyne-Fague Affidavit at 10. When inmates first began to test positive, a small number were moved into cellblocks with other positive cases, but as the numbers began to grow, the facility had no available unused space to turn into positive-only cellblocks. (*Id.*, Corry Affidavit at 6.) There were only ten single occupancy rooms behind the medical dispensary. *Id.* Almost immediately, the conflict between what the plaintiff argues should have happened and what did happen arose: "cohort-isolation," a phrase which the parties use to mean housing positive cases with positives and negative cases with negatives, was rejected by the prison administration because a guiding principle emerged, prompted by CDC guidelines, to avoid whenever possible transporting inmates through the prison.[3]

---

[3] According to Warden Corry, the CDC Guidance of October 21, 2022 [sic], instructed facilities to minimize the mixing of people from different housing units. ECF No. 101-1. Corry Affidavit at 7. Presumably the date attributed to this guidance by Warden Corry in her Affidavit is in error.

Mr. DeBritto maintains that the refusal to adopt cohort isolation manifested a deliberate disregard of the known risk to his health of infection. Cohort isolation would require clearing a cellblock of negative cases, transferring them to other cellblocks, and moving in positive cases. Moreover, those who had been "exposed" could not reside close to negative cases because they, the exposed, could turn positive without warning. Finally, status could and did change in days: previously positive people became negative and previously negative people tested positive. To complicate matters, there were already in place housing restrictions involving inmate history, known enemies, and gang affiliations. *Id.*, Corry Affidavit at 7-8. The administration concluded that shuffling inmates around based on criteria constantly in flux would not be safe. On consultation with the Medical Director, Warden Corry opted to adopt a "quarantine-in-place" policy effective at the end of October 2020. *Id.*, Corry Affidavit at 8. Inmates were fed in their cells, recreation and other activities were restricted, showering was grouped by testing status, showers were cleaned between cohorts, and staff movement within facilities was also restricted. *Id.* Routine transfers of inmates were suspended, and no inmate could move through blocks other than their own in Maximum Security. *Id.*, Corry Affidavit at 7.

There is really no dispute about the above facts. Cohort-isolation instead of quarantine-in-place was discussed and clearly intentionally rejected by the prison

administration.  That decision is the basis of Mr. DeBritto's complaint of deliberate

indifference to his health.[4]

[4] Mr. DeBritto complains of three other circumstances that *are* a matter of factual dispute.  First, he claims it was a non-medical ACI official, a Captain Duffy, who decided what protocols to follow.  The defendants deny that Capt. Duffy played this role, but this dispute does not preclude summary judgment for many reasons.  Mr. DeBritto puts forth no evidence in support of his allegation, whereas the defendants' affidavits support the assertion that the decision was made by Director Coyne-Fague and Warden Corry in consultation with the Medical Director and staff.  Mr. DeBritto points to a letter referring to "guidelines and restrictions that Captain Duffy *has outlined*." (ECF No. 92-2, Exh. I(1) (emphasis supplied.))  But "outlining" is not creating, it is merely describing.  Second, even had Capt. Duffy created the protocols, that might support deliberate indifference only if there were no medical officials participating in the decision and the record clearly belies that conclusion.  Third, a non-medical official establishing protocols would not per se constitute an 8th Amendment violation if the protocols were adequate and based on medical guidance.

The second circumstance is Mr. DeBritto's assertion that correctional officers failed to follow the protocols and that the defendants were responsible for that failure.  In support, he points to an email from Dr. Clarke on March 16, 2020, implying that positive cases should be separated.  Even if there were evidence that this was an Order that was not followed, it occurred seven months before Mr. DeBritto contracted COVID-19, the protocols had changed in those seven months and the prevalence of COVID-19 by November was altogether different than it had been in March.  *See Bayley's Campground, Inc. v. Mills,* 985 F.3d 153, 157 (1st Cir. 2021) (acknowledging the "dynamic nature of both the virus that has given rise to this pandemic and the public health response to it").  This limited evidence cannot support supervisory liability which requires a showing that supervisors either directed staff to disregard the policies or knew that they were doing so and ignored it.  *Muata v. Hicks,* No. 21-3210, 2022 WL 2526692, at *2 (3rd Cir. July 7, 2022).

Finally, Mr. DeBritto maintains that an officer named Wheeler was working in Prudence-1 when he was supposed to be in quarantine.  (ECF No. 92, at14.)  The evidence establishes that Officer Wheeler had been exposed to COVID-19 and was therefore supposed to be quarantined but was, instead, on duty in Maximum Security.  Mr. DeBritto has offered no evidence, however, to establish causation between Officer Wheeler's exposed status and his own illness.  By November 13, 2020, when Mr. DeBritto tested positive, dozens of others could have been the source of his infection, as nearly 60 inmates in Maximum Security were testing positive at the time.  (ECF No. 101-1, Clarke Affidavit at 13.)

None of these factual disputes are material and none therefore preclude summary judgment.

### B. Applicable Law: Deliberate Indifference

The government has the obligation to safeguard the physical security of those it incarcerates, to protect them from known risks. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The authorities need not know of a precise risk, or foretell precise harm, but they must act to forestall a substantial risk of harm of which they are aware. *Calderon-Ortiz v. LaBoy-Alvarado*, 300 F.3d 60, 65 (1st Cir. 2002). Because of the lack of control prisoners have over their own treatment, the government bears the burden of ensuring that a prisoner's medical needs are reasonably met with adequate and timely treatment. If prison personnel are "deliberately indifferent" to the "serious medical needs" of prisoners, their acts and omissions manifesting that indifference constitute "unnecessary and wanton infliction of pain" amounting to cruel and unusual punishment in violation of the Eighth Amendment. *Estelle v. Gamble,* 429 U.S. 97, 104-05 (1976) (quoting *Gregg v. Georgia,* 428 U.S. 153, 173 (1976).

An *Estelle* claim has two components: an objective one and a subjective one. The objective prong is met by a showing of a serious medical need and the subjective prong is met by a showing of deliberate indifference. *Martinez v. Blanchette,* C.A. No. 14-537L, 2015 WL 9315562, at *3 (D.R.I. Oct. 29, 2015). While "deliberate indifference" has been compared to "shock[ing] the conscience," *Torraco v. Maloney,*

923 F.2d 231, 235-36 (1st Cir. 1991), the application of law to facts indicates the standard is not quite so extreme as those words would imply.[5]

### 1. The Objective Prong.

A "serious medical need" is one that a physician has diagnosed as requiring treatment, *Martinez* at *3, or one that is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Perry v. Roy*, 782 F.3d 73, 78-78-79 (1st Cir. 2015) (citing *Gaudreault v. Municipality of Salem, Mass.,* 923 F.2d 203, 208 (1st Cir.1990)). There cannot be any question that the COVID-19 infection and the need to protect oneself from contracting it presented a "serious medical need." Nor do the defendants argue otherwise. The defendants' arguments concern whether the defendants showed deliberate indifference to the risk and to prevention of the spread of the virus. The plaintiff has thus met the first prong of the *Estelle* test.

### 2. The Subjective Prong

The bedrock requirement for proving deliberate indifference is that prison officials were aware that a substantial risk of harm to the prisoner existed (or drew an inference of substantial risk from facts of which they were aware) but disregarded it. *Leavitt v. Corr. Med. Servs., Inc.*, 645 F.3d 484, 497 (1st Cir. 2011). "The

---

[5] "Shocks the conscience" was coined to denote violations of due process caused by unreasonable searches and seizures prior to the incorporation of the Fourth Amendment into the Fourteenth and thus referred only to extreme government action. *Rochin v. California,* 342 U.S. 165, 172 (1952). The Eighth Amendment requirement, by comparison, as applied by courts, does not compare to the stomach pumping at issue in *Rochin* whose hallmark was the actual violence done to the unconsenting defendant's body by the forcible insertion of an emetic solution through a tube.

fundamental question in any deliberate-indifference case is whether the defendants exhibited 'a sufficiently culpable state of mind.'" *Swain v. Junior,* 961 F.3d 1276, 1288 (11th Cir. 2020) (quoting *Farmer*, 511 U.S. at 834.) Awareness may be inferred if the risk is obvious, *Burrell v. Hampshire Cnty.*, 307 F.3d 1, 8 (1st Cir. 2002), but in this case there is no doubt from the defendants' actions that they were acutely aware of the risk of contagion. Disagreements about proper medical care do not lay a foundation for Eighth Amendment violations. *Watson v. Caton*, 984 F.2d 537, 540 (1st Cir. 1993) (upholding dismissal of claim with a finding that a physician's rejection of a prisoner's desire for physical therapy, drugs and rest was merely a disagreement about the proper course of treatment not deliberate indifference). Nor, generally, do disagreements about the adequacy of medical treatment. *E.g.*, *Layne v. Vinzant*, 657 F.2d 468, 474 (1st Cir. 1981) (finding that no deliberate indifference existed where there was no evidence that physical therapy was inadequate treatment for a wheelchair-bound prisoner).

The record here cannot support a conclusion of deliberate indifference and, indeed, attests to the careful consideration DOC gave to the risk. Clearly the question of whether to implement cohort-isolation or quarantine-in-place spawned legitimate disagreements. Along with seriously considering both options and following the CDC guidelines as much as possible, DOC took affirmative steps to try to control the spread of COVID-19. It immediately reduced inmates' exposure to each other by restricting or eliminating group activities, imposing in-cell meals, and terminating routine transfers within and between facilities. It instituted cleaning protocols and supplied

inmates and staff with cleaning and sanitizing material. It instituted testing of staff and inmates, monitoring the temperature and pulse of high-risk inmates, and distributing KN-95 masks to inmates testing positive. It imposed policies for staff which, perhaps not followed 100 percent, nonetheless were policies designed to minimize contagion.

Many cases challenging COVID-19 protocols in prisons have been litigated. Overwhelmingly, prison officials who enacted policies in a considered attempt to minimize the risk of contagion, have been found not to have met the standard for reckless or deliberate indifference. *See e.g.*, *Muata v. Hicks,* No. 21-3210, 2022 WL 2526692, at *1 (3rd Cir. July 7, 2022) (East Jersey State Prison at Rahway); *Valentine v. Collier,* 978 F.3d 154, 164 (5th Cir. 2020) (Wallace Pack Unit of Texas Dept. of Crim. Justice); *Robinson v. Washington*, No. 22-136, 2022 WL 855275, at *20 (6th Cir. May 5, 2023) (Kinross Correctional Facility, Michigan); *Rowe v. Buss,* No. 21-1182, 2021 WL 5232512, at *6 (7th Cir. Nov. 10, 2021) (Indiana State Prison); *Swain v. Junior,* 961 F.3d 1276, 1288 (11th Cir. 2020) (Miami Metro West Detention Center).[6] The measures taken in cases like these were similar to the measures taken

---

[6] In *Glennie v. Garland,* C.A. No. 21-231, 2023 WL 2265247, at *12 (D.R.I. Feb. 28, 2023), *adopted* 4/13/2023 by text order, a Magistrate-Judge of this Court found that the plaintiff could not withstand a Motion to Dismiss his action alleging inadequate contagion prevention measures at the Wyatt Detention Facility. There, however, the Court found the plaintiff had failed to allege more than generalized statements that the prison administration had not done enough. "Plaintiff must provide more than generalized allegations that [Wyatt] failed to adopt adequate COVID-19 protocols or that the Warden failed to do enough regarding overcrowding, prison movement or housing assignments to adequately control the spread of COVID-19." *Id.* In this case, the Court is ruling on summary judgment, not the plausibility of the claim, but in

here. *See, e.g.*, *Cameron v. Bouchard*, 818 F. App'x 393, 395 (6th Cir. 2020) (Oakland County Jail) (moratorium on visits, cleaning instructions, prepackaged meals, cancellation of group activities, promoting social distancing); *Wilson v. Williams,* 961 F.3d 829, 840-41 (6th Cir. 2020) (Elkton Federal Correctional Institution) (implementation of 6-phase action plan, canceling visits, screening, quarantining new inmates, ramping up testing, providing disinfectant supplies and masks).

"The Eighth Amendment does not mandate perfect implementation." *Valentine*, 978 F.3d at 165. Policies that are "short of perfect" do not equal a constitutional violation. *Id.* at 164. This Court is not in a position to determine whether DOC officials made the best judgment call or even a good one. "As judges, our conscribed role is not to assess whether prison officials could have done more to contain the virus – no doubt they could have . . . Our limited role is [] to determine whether [the defendant] has made the requisite showing that its efforts to combat COVID-19 satisfied the constitutionally required minimum." *Id.* at 158. The COVID-19 pandemic challenged the nation and taxed healthcare resources across the country and the world. The congregate circumstances of Maximum Security made the job of

any event Mr. DeBritto's allegations are specific, not generalized. His problem is the state of the evidence, not the legal sufficiency of his claim.

limiting infection and illness more difficult.[7]  "Failing to do the 'impossible' doesn't evince indifference, let alone deliberate indifference."  *Swain*, 961 F.3d at 1287.

## C. Adequacy of Treatment

The main thrust of Mr. DeBritto's complaint is the failure to isolate cohorts. In his Amended Complaint, however, he alludes to a failure on the part of ACI medical staff to treat him adequately when he contracted COVID-19.  (ECF No. 18-1.)  The only evidence in the record relating to treatment comes from the affidavit of Director of Nursing at DOC, Kimberly Kane.  She attested that over-the-counter medications were readily available to all inmates but that there was no record of Mr. DeBritto requesting any.  (ECF No. 101-1, Kane Affidavit at 2-3.) Nor was there a record of his revealing any symptoms that might have been relieved by over-the-counter medication.  *Id.*, Kane Affidavit at 3.  Even if Mr. DeBritto's medical care were less than satisfactory, for which there is no support in the record, he would have to surmount the obstacle that negligence, even if resulting in medical malpractice, is not a constitutional concern.  *Feeney v. Corr. Med. Servs., Inc.,* 464 F.3d 158, 162 (1st

---

[7] While not result-determinative, it is significant to note that the outbreak of November 2020, which began on October 31 with the first positive inmate at Maximum, was halted at least temporarily by the end of the month.  There were no positive inmates after November 30, 2020, and the next positive result did not occur until February 2021.  (ECF No. 101-1, Kane Affidavit Kane, at 3-4.)  Although the rate of infection among prisoners was three times that of the general population, the two COVID-19 deaths in Rhode Island state prisons represented a fatality rate far less than that of the population at large.    The Marshall Project, "A State-by-State Look at 15 Months of Coronavirus in Prisons," A State-By-State Look at 15 Months of Coronavirus in Prisons | The Marshall Project (July 1, 2021).  Rhode Island was one of the first, if not the first, state to offer COVID-19 vaccines to its prisoners.  *Id.*

Cir. 2006) (mere negligence is not enough). The threshold for an Eighth Amendment inadequate treatment claim is far higher. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle,* 429 U.S. at 106.

### D. Conclusion

This case is about the tension created by the desire to prevent infection by removing positive inmates from the cellblock and the simultaneous need to limit contagion by restricting movement of positive inmates through the facility. That tension reflected the prison's conflicting duties: on the one hand, it owed a duty of care to every individual inmate, including Mr. DeBritto, which might militate toward moving infected inmates away from him. On the other hand, it owed an equal duty of care to the population in general, which militated toward a policy that would slow the speed with which the virus spread throughout the facility by quarantining positive inmates in place. Mr. DeBritto's lamenting the choice that did not prioritize him as an individual inmate is understandable: whether he contracted COVID-19 because of that decision or not, he and everyone at Maximum Security, inmate and staff, faced a serious risk with severe consequences. But in choosing the alternative believed to be the most successful in protecting the facility's entire population, the prison's officials did not act unreasonably, and did not act in reckless disregard of the risk to Mr. DeBritto.

Mr. DeBritto's Motion for Summary Judgment (ECF No. 92) is DENIED.  The

Motions for Summary Judgment filed by the defendants (ECF No. 93, 95) are

GRANTED.


IT IS SO ORDERED:

_____

Mary S. McElroy,
United States District Judge


August 1, 2023

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

---

|  |  |
|---|---|
| TIMOTHY DeBRITTO, | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) No. 1:21-cv-00017-MSM |
|  | ) |
| PATRICIA COYNE-FAGUE, | ) |
| DIRECTOR, DEPT. OF CORRECTIONS, | ) |
| Defendant. | ) |
|  | ) |

---

ORDER

**<u>JUDGMENT</u>**

IT IS ORDERED AND ADJUDGED:

Judgment hereby enters in accordance with the Mem and Order of 8/1/2023

Enter:

/s/ Carrie L. Potter
Deputy Clerk

Dated: 8/1/2023

United States District Court
District of Rhode Island

Timothy DeBritto

v.                                    Case No.: 1:21-CV-00017-MSM-LDA

Patricia Coyne-Fague, Et AL,

Affidavit in Support of
Material facts Supporting
Plaintiffs motion for Summary
Judgment authorized by Rule 56(c)

This is an affidavit containing facts supporting affiants motion for summary judgment. These material facts are sworn to be true and correct under penalty of perjury pursuant to 28 U.S.C §1746; I, Timothy DeBritto, state the following:

1. My Original complaint in this matter was properly filed on the 8th of January, 2021.

2. Defendants were properly Served, entered appearance, and responded timely.

3. All material facts I rely upon has been provided to me through discovery by defendants, and by responsive letters from former and current

R.I.D.O.C personnel.

    A. Affidavit of Jennifer Clarke, M.D,
    regarding Sars-Cov-2 infection
    (otherwise Known as Covid-19)


4. In paragraph (5) of Defendant, Jennifer Clarke, M.D, affidavit she states that she is in agreement with parts 6-9 of the affidavit of Danielle C. Ompad, Ph.D, regarding Sars-cov-2 infection (Covid-19) in Correctional settings. See: Exhibit (A) 1 & 2. (Each affidavit is dated 3-31 and 3-26, 2020.

5. Parts 6-9 of Danielle C. Ompad, Ph.D, affidavit highlights the transmission risk in correctional settings, which she asserts is a high risk factor in part 6 A-d. See: Exhibit (A) 2.

6. In part 7 A-C, Danielle C. Ompad, Ph.D, highlights the risk of severe disease and death among incarcerated individuals. she asserts that "The likelihood that there will be severe cases is high" with regard to Covid-19. See: Exhibit (A) 2.

7. In part 9(b), Danielle C. Ompad, Ph.D, acknowledges that the introduction of the Sars-cov-2 virus to the correctional facility could be from correctional staff, attorneys, and/or a newly incarcerated person. See: Exhibit (A) 2.

B. Defendant Jennifer Clarke's notes:
  Coronavirus 3-10-20.docx

8. On page 2, titled "R.I.DOC Quarantine implementation overview", Defendant Jennifer Clarke, M.D, defines isolation as "isolation refers to the procedure of seperating a person who is already sick from others who are not ill in order to prevent the spread of disease".
<u>See: Exhibit (B)</u>

9. On page 3, titled "Isolation and treatment of suspected case(s) of Covid-19 (PUI)", Defendant Jennifer Clarke, M.D, states in Section 4. Treatment: "All patients should receive supportive care with oral hydration and analgesic / antipyretic agents" and "initiate antibiotics for any secondary bacterial infections such as pneumonia". <u>See: Exhibit (B)</u>

C. Defendant, Jennifer Clarke, M.D,
  March 16, 2020  8:52am
  Message to Defendant, Coyne-Fague.

10. Defendant, Jennifer Clarke, M.D, states in part 7, "identify areas to seperate the ill." <u>See: Exhibit (c)</u>

D. Defendant, Jennifer Clarke, M.D,
  October 15th, 2020  12:30 pm
  Message to Defendant, Coyne-Fague

11. Defendant, Jennifer Clarke, M.D, states on page 1-2 Clarke Addendum - Page 21

have become confused by working during quarantine and feel that it is ok to come in while ill". Defendant, Jennifer Clark further states "we have had multiple cases of people requesting a rapid test while at work because they have a runny nose. About half the staff with Covid had symptoms and were at work prior to testing positive." <u>See : Exhibit (D)</u>

E. Defendant, Lynne Corry's
November 2nd, 2020   5:26pm
Message to Superior Officers

12. Defendant, Lynne Corry, in the second sentence/part of her message to the above Superior Correctional officers states that " There are a handful of staff members that keep missing the surveillance test (Covid testing) and although it may be for legitimate reasons, it is the same names every month." <u>See : Exhibit (E)</u>

F. Defendants, Lynne Corry's
November 2nd, 2020   5:36pm
Message to Superior Officers

13. Defendants, Lynne Corry, in the first paragraph states " As you all know Max has had one positive officer which essentially quarantined a whole block (Prudence 1 cell block where Plaintiff is housed). In addition to the block contact tracing has revealed that staff again are becoming complacent with each other and pulling masks down for lengthy periods of time, eating in front of each other etc... See : Exhibit (F)   Clarke Addendum - Page 22

4 of 8

### G. Rhode Island D.O.C Staff
### Quarantine Log

14. R.I.D.O.C staff quarantine log reveals that Correctional officer wheeler was suppose to be under quarantine on the dates he worked in maximum security, Prudence 1 housing area where Plaintiff is housed. See: Exhibit (b)

### H. Response of Defendants, Patricia Coyne-Fague
### and Lynne Corry to Plaintiffs second interrogatories
### and request for production of documents.

15. In paragraph 2, Defendants are asked to "State the names, titles, and numbers of hours Correctional staff spent on training for Coronavirus prevention", to which Defendants respond, "No formal training was given regarding Coronavirus prevention." See: Exhibit (H)

### I. Deputy Warden Bray's response
### to Plaintiff's letter of Concern /
### Grievance response from Dr. Pauline Marcussen

16. Response of former Deputy Warden Bray, wherein she states that Covid-19 guidelines at maximum security prison were put in place by a Correctional officer, Known as Captain Walter Duffy. See: Exhibit (I) 1

17. Response letter from Dr. Pauline Marcussen, wherein she states "moving infected patients out of their housing areas has the potential during increase

transmission and this can be detrimental to others". <u>See: Exhibit (I) 2</u>

### J. Plaintiff's Sars-cov-2 Test
### Results

18. Plaintiff's submission of his negative sars-cov-2 test result dated 11/13/2020. <u>See: Exhibit (J) 1</u>

19. Plaintiff's submission of his positive Sars-cov-2 test result dated 11-25-2020. <u>See: Exhibit (J) 2</u>

### K. Defendants Job Descriptions

20. Plaintiff's submission of Defendant, Patricia Coyne-Fague's job description, statutorily found at Rhode Island general law § 42-56-10; Powers of the Director. <u>See: Exhibit (K) 1</u>

21. Plaintiff's submission of Defendant, Jennifer Clarke's job description as medical director at the Rhode Island Department of Corrections (R.I.D.O.C). See: Exhibit (K) 2

22. Plaintiff's submission of Defendant, Lynne Corry's job description as Warden of Maximum Security. See: Exhibit (K) 3

### L. In Conclusion, There exist no
genuine issues of material facts Defendants
may rely upon to proceed further

Clarke Addendum - Page 24

23. All material facts submitted herein, reveals that the Defendants; (1) did have Covid-19 prevention plans prior to the 1st covid positive case at maximum security prison.; (2) did not follow prevention plans established far before the first covid positive case at maximum security.; (3) had knowledge of ill officers coming to work while understanding the "high risk" factors involved.; (4) failed to treat and isolate infected inmates.; and (5) left the daily decisions in the hands of a non-medical, unprofessional, grossly negligent correctional superior officer at maximum security prison, namely, Captain Walter Duffy.

24. I have been diagnosed positive for Sars-Cov-2 (Covid-19) and continue to experience the lingering effects. This I assert is due to Defendants' failure to adhere to the prevention plans as highlighted herein.

Verified Affidavit of material facts in
Support of motion for Summary Judgment

I, Timothy DeBritto, assert that all facts asserted herein are true and correct, no matter herein is based upon belief. This I state under penalty of perjury, pursuant to 28 U.S.C §1746

Date: 11-14-2022                               /s/ T. DeBritto

## Certification

I, Timothy DeBritto, have caused a copy of this affidavit in support of motion for summary judgment, to be sent via 1st class mail, to the defendants, through their attorneys located at: 150 South main street, Providence, RI 02903, on this 14th day of november, 2022.

F DeBritto

Timothy DeBritto #133689
Maximum Security
P.O. Box 8273
Cranston, RI 02920

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

TIMOTHY DEBRITTO                    :
     *Plaintiff,*                 :
                                  :
    **v.**                          :     **C.A. No.: 1:21-cv-00017-MSM-LDA**
                                  :
PATRICIA COYNE-FAGUE, et al.        :
     *Defendants*                 :

## <u>STATEMENT OF UNDISPUTED FACTS</u>

NOW COMES the Defendant, Jennifer Clarke, M.D., in the above-referenced matter and, pursuant to Rule 56 of the Federal Rules of Civil Procedure and the Local Rules for the United States District Court for the District of Rhode Island, hereby submits her Statement of Undisputed Facts as follows:

1. Plaintiff, Timothy DeBritto, is an inmate of the Rhode Island Department of Corrections ("RIDOC"), housed in the Maximum Security Facility ("Max") of the Adult Correctional Institutes ("ACI"), located in Cranston, Rhode Island. *See* ECF 18-1, p. 2.

2. Defendant, Dr. Jennifer Clarke, held the position of Medical Program Director for the Rhode Island Department of Corrections until December 2020. *See* ECF 18-1, p. 3; Affidavit of Dr. Clarke, attached  as <u>Exhibit 1</u>.

3. On March 9, 2020, then Governor Gina Raimondo declared a state of emergency due to the dangers posed by COVID-19. *See* Executive Order 20-02, <u>ECF 39-2</u>.

4. The declaration of a state of emergency automatically extended the statutory immunity granted by R.I. GEN. LAWS §30-15-15(a) to disaster response workers, immunity that was subsequently affirmed and expanded by executive orders. *See* R.I. GEN. LAWS §30-15-15(a), Executive Orders,  <u>ECF 45-2, pp.9-29.</u>

11. On November 5, 2020, Mr. DeBritto received a COVID-19 test. *See* Medical Records, attached as Exhibit 3, p. 1-2. The negative results were reported to Dr. Clarke on November 7, 2020. Id.

12. On November 8, 2020, Dr. Clarke responded to Captain Tierney of the Intake Service Center ("ISC") and RIDOC administrators with stricter group size recommendations for inmate recreation and showering to closely mimic the RIDOH guidelines. Exhibit 2, p.8-9. Dr. Clarke further suggested extending showering and recreation times into third shift to allow for smaller group sizes. Id.

13. On November 13, 2020, Mr. DeBritto received a COVID-19 test. Exhibit 3, p. 3-4. The negative results were reported to Dr. Clarke on November 17, 2020. Id.

14. On November 14, 2020, the Maximum Security facility was placed in full quarantine after sixty (60) positive cases. *See* Maximum Security Pandemic Update November 14, 2020, attached as Exhibit 4.

15. On November 17, 2020, Healthcare Services sent all Max inmates a memo outlining the steps to keep everyone safe. *See* RIDOC Health Care Services Memo, attached as Exhibit 5. The memo highlights the importance of practicing social distancing when outside of cells, mask wearing, and handwashing. Id.

16. On November 17, 2020, Dr. Clarke provided Co-Defendant Warden Corry with a list of inmates at Max needing kn95 masks and eye protection in order to benefit from proper PPE when outside of their cells. Exhibit 2, p. 10-13. Plaintiff was included on that list. Exhibit 2, p. 11.

17. On November 20, 2020. Dr. Clarke provided guidelines for Medium Security after positive inmate tests. Exhibit 2, p. 14. Dr. Clarke urged everyone to follow the recommendations for quarantine. Id.

18. On November 23, 2020, Mr. DeBritto received a COVID-19 test. Exhibit 3, p. 5-6. The positive results were reported to Dr. Clarke on November 25, 2020. Id.


DEFENDANT JENNIFER CLARKE

By her attorneys,

**TATE & LATHAM LLC**


  /s/ Jeffrey G. Latham
Jeffrey G. Latham, Esquire [#6264]
Christine A. Stowell, Esquire [#7967]
40 Westminster Street, Suite 350
Providence, RI 02903
401.421.7400
401.351.3239 [Fax]
jlatham@tatelawri.com
cstowell@tatelawri.com


<u>**CERTIFICATION**</u>

I hereby certify that a true copy of the within was mailed, postage prepaid, on this 30th day of November, 2022, to the following:

***Legal Mail/Confidential***
Timothy DeBritto
*133689*
Maximum Security
P.O. Box 8273
Cranston, RI  02920-0273


  /s/ Jeffrey G. Latham

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **TIMOTHY DEBRITTO** | : | |
| *Plaintiff,* | : | |
| | : | |
| **v.** | : | **C.A. No.: 1:21-cv-00017-MSM-LDA** |
| | : | |
| **PATRICIA COYNE-FAGUE, et al.** | : | |
| *Defendants* | : | |

## <u>AFFIDAVIT</u>

NOW COMES the affiant, Jennifer Clarke, M.D., M.P.H., F.A.C.P., and, after having been duly sworn, states as follows:

1. I held the position of Medical Program Director for the Rhode Island Department of Corrections from November 2015 through December 2020.

2. The Medical Program Director is responsible for the preparation and submission of recommendations for patient care to the prison administrators. The Medical Program Director cannot order inmate movement absent a true medical emergency.

3. From March 2020 through December 2020, I was responsible for making recommendations to the administrators of the Rhode Island Department of Corrections regarding policies and procedures to prevent and/or mitigate the spread of SARS-CoV-2, the virus which causes COVID-19.

4. From March 2020 through December 2020, the recommendations I provided to the administrators were consistent with the guidelines for Correctional Facilities issued by the Centers for Disease Control, and made after consultation with the Rhode Island Department of Health.

5. From March 2020 through December 2020, I encouraged social distancing, hand washing, and mask wearing throughout the ACI, to staff and inmates alike, as these are the best strategies to prevent the spread of COVID-19.

6. On October 31, 2020, per my recommendations, the Prudence-1 cell block in the Maximum Security facility was placed into a 14-day quarantine after a single positive contact.

7.    Unfortunately, by November 13, 2020, nearly sixty (60) inmates in the Maximum Security facility tested positive for COVID-19, resulting in a facility-wide quarantine.

8.    In Maximum Security, inmates reside in individual, solid walled cells, each with private bathroom facilities. Given this setup, positive and suspected positive inmates were able to achieve near ideal isolation conditions as delineated by the Correctional Facility guidelines issued by the Centers for Disease Control.

9.    Given the near ideal isolation conditions already in place in Maximum Security, the risks to both other inmates and staff of moving a positive or suspected positive inmate through the facility to a designated were substantial and not justifiable.

10.   On November 17, 2020, at my direction, all inmates testing negative in Maximum Security were prioritized to receive KN95 masks and eye protection

11.   Despite my recommendations and the issuance of high quality PPE (personal protective equipment), most of the remaining inmates in the Maximum Security Facility tested positive for COVID-19 by November 25, 2020, including the plaintiff, Timothy DeBritto.

12.   Based on my knowledge and experience, the COVID-19 symptoms Mr. DeBritto describes as occasional loss of taste and smell, fatigue, headaches, insomnia, and brain fog, are relatively mild and known to linger for a month or two after a positive COVID-19 test.

13.   I have reviewed Mr. DeBritto's medical records from November 2020 through February 2022, and I see no evidence that he sought medical care or treatment for any of the acute or long-lasting symptoms he alleges in his complaint.

14.   I have reviewed Mr. DeBritto's medical records from the time of his incarceration in 2013 up through February 2022, and I see no evidence of any pre-existing health conditions which would place him at an increased risk for serious complications from COVID-19.

Jennifer Clarke, M.D.

2

Subscribed and sworn to before me at AAA Providence , Rhode Island, on this 5 day of October , 2022.

_Kellie M Mixn_

Notary Public

My Commission expires: 06-07-202_

3

# TITLE 30
# Military Affairs and Defense

## CHAPTER 30-15
## Emergency Management

### SECTION 30-15-15

**§ 30-15-15. Immunity from liability – Compensation for death or injury of disaster response workers.**

(a) All functions under this chapter, and all other activities relating to disaster response, are hereby declared to be governmental functions. Neither the state, nor any political subdivision thereof, nor other agencies of the state or political subdivision thereof, nor, except in cases of willful misconduct, gross negligence, or bad faith, any disaster response worker complying with, or reasonably attempting to comply with this chapter, or any order, rule, or regulation promulgated pursuant to the provisions of this chapter, or pursuant to any ordinance relating to precautionary measures enacted by any political subdivision of the state, shall be liable for the death of, or injury to, persons, or for damage to property, as a result of disaster response activity. The provisions of this section shall not affect the right of any person to receive benefits to which he or she would otherwise be entitled under this chapter, nor under the Workers' Compensation Act, chapters 29 – 38 of title 28, nor under any pension law, nor the right of any person to receive any benefits or compensation under any act of Congress.

(b) Any requirement for a license to practice any professional, mechanical, or other skill shall not apply to any authorized disaster response worker who shall, in the course of performing his or her duties as such, practice such professional, mechanical, or other skill during a disaster emergency.

(c) In the absence of any other benefits as provided by law, all disaster response workers who shall be killed or sustain disability or injury while in training for or on disaster response duty shall be construed to be employees of the state, any other provisions of the law to the contrary notwithstanding, and shall be compensated in like manner as state employees are compensated under the provisions of chapters 29 – 38 of title 28.

(d) As used in this section, the term "disaster response worker" shall include any full- or part-time paid, volunteer, or auxiliary employee of this state, other states, territories, or possessions, the District of Columbia, the federal government, any neighboring country, or any political subdivision thereof, or any agency or organization, or any private person, firm, or corporation performing disaster response services at any place in this state subject to the order or control of, or pursuant to a request of, the state government or any political subdivision thereof.

History of Section.
(P.L. 1973, ch. 67, § 2; P.L. 2003, ch. 185, § 4; P.L. 2003, ch. 189, § 4; P.L. 2016, ch. 511, art. 2, § 38.)

Clarke Addendum - Page 33

# United States Court of Appeals
## For the First Circuit

# Rulebook



**Federal Rules of Appellate Procedure**

**First Circuit Local Rules**

**First Circuit Internal Operating Procedures**

**Administrative Order Regarding**
**Case Management /Electronic Case Files System ("CM/ECF")**

**Rules of Attorney Disciplinary Enforcement for the**
**Court of Appeals for the First Circuit**

**Rules For Judicial-Conduct and Judicial-Disability Proceedings**

Effective with amendments through May 20, 2021

**Maine**    ●    **Massachusetts**    ●    **New Hampshire**

**Rhode Island**    ●    **Puerto Rico**

## TITLE VII.   GENERAL PROVISIONS

### Rule 25.   Filing and Service

**(a)   Filing.**

(1)   **Filing with the Clerk.**   A paper required or permitted to be filed in a court of appeals must be filed with the clerk.

(2)   **Filing:   Method and Timeliness.**

   (A)   **Nonelectronic Filing.**

      (i)   **In General.** For a paper not filed electronically, filing may be accomplished by mail addressed to the clerk, but filing is not timely unless the clerk receives the papers within the time fixed for filing.

      (ii)   **A Brief or Appendix.** A brief or appendix not filed electronically is timely filed, however, if on or before the last day for filing, it is:

- mailed to the clerk by first-class mail, or other class of mail that is at least as expeditious, postage prepaid; or

- dispatched to a third-party commercial carrier for delivery to the clerk within 3 days.

      (iii)   **Inmate Filing.** If an institution has a system designed for legal mail, an inmate confined there must use that system to receive the benefit of this Rule 25(a)(2)(A)(iii). A paper not filed electronically by an inmate is timely if it is deposited in the institution's internal mail system on or before the last day for filing and:

- it is accompanied by: a declaration in compliance with 28 U.S.C. § 1746—or a notarized statement—setting out the date of deposit and stating that first-class postage is being prepaid; or evidence (such as a postmark or date stamp) showing that the paper was so deposited and that postage was prepaid; or

- the court of appeals exercises its discretion to permit the later filing of a declaration or notarized statement that satisfies Rule 25(a)(2)(A)(iii).

   (B)   **Electronic Filing and Signing.**

      (i)   **By a Represented Person—Generally Required; Exceptions.** A person represented by an attorney must file electronically, unless nonelectronic filing is allowed by the court for good cause or is allowed or required by local rule.

      (ii)   **By an Unrepresented Person—When Allowed or Required.** A person not represented by an attorney:

- may file electronically only if allowed by court order or by local rule; and

- may be required to file electronically only by court order, or by a local rule that includes reasonable exceptions.

      (iii)   **Signing.** A filing made through a person's electronic-filing account and authorized by that person, together with that person's name on a signature block, constitutes the person's signature.

      (iv)   **Same as a Written Paper.** A paper filed electronically is a written paper for purposes of these rules.

(3)   **Filing a Motion with a Judge.** If a motion requests relief that may be granted by a single judge, the judge may permit the motion to be filed with the judge; the judge must note the filing date on the motion and give it to the clerk.

(4)   **Clerk's Refusal of Documents.** The clerk must not refuse to accept for filing any paper presented for that purpose solely because it is not presented in proper form as required by these rules or by any local rule or practice.

(5)   **Privacy Protection.** An appeal in a case whose privacy protection was governed by Federal Rule of Bankruptcy Procedure 9037, Federal Rule of Civil Procedure 5.2, or Federal Rule of Criminal Procedure 49.1 is governed by the same rule on appeal. In all other proceedings, privacy protection is governed by Federal Rule of Civil Procedure 5.2, except that Federal Rule of Criminal Procedure 49.1 governs when an extraordinary writ is sought in a criminal case.

**(b)**   **Service of All Papers Required.** Unless a rule requires service by the clerk, a party must, at or before the time of filing a paper, serve a copy on the other parties to the appeal or review. Service on a party represented by counsel must be made on the party's counsel.

**(c)**   **Manner of Service.**

(1)   Nonelectronic service may be any of the following:

      (A)   personal, including delivery to a responsible person at the office of counsel;

      (B)   by mail; or

      (C)   by third-party commercial carrier for delivery within 3 days.

(2)   Electronic service of a paper may be made (A) by sending it to a registered user by filing it with the court's electronic-filing system or (B) by sending it by other electronic means that the person to be served consented to in writing.

(3)    When reasonable considering such factors as the immediacy of the relief sought, distance, and cost, service on a party must be by a manner at least as expeditious as the manner used to file the paper with the court.

(4)    Service by mail or by commercial carrier is complete on mailing or delivery to the carrier. Service by electronic means is complete on filing or sending, unless the party making service is notified that the paper was not received by the party served.

**(d)    Proof of Service.**

(1)    A paper presented for filing must contain either of the following if it was served other than through the court's electronic-filing system:

(A)    an acknowledgment of service by the person served; or

(B)    proof of service consisting of a statement by the person who made service certifying:

(i)    the date and manner of service;

(ii)    the names of the persons served; and

(iii)    their mail or electronic addresses, facsimile numbers, or the addresses of the places of delivery, as appropriate for the manner of service.

(2)    When a brief or appendix is filed by mailing or dispatch in accordance with Rule 25(a)(2)(A)(ii), the proof of service must also state the date and manner by which the document was mailed or dispatched to the clerk.

(3)    Proof of service may appear on or be affixed to the papers filed.

**(e)    Number of Copies.**    When these rules require the filing or furnishing of a number of copies, a court may require a different number by local rule or by order in a particular case.

*Local Rule 25.0. Electronic Case Filing System and Facsimile*
*(a)    Electronic Case Filing. Use of the electronic filing system is mandatory for all attorneys filing in this court, unless they are granted an exemption, and is voluntary for all non-incarcerated pro se litigants proceeding without counsel.*

*(1)    The clerk may make changes to the procedures for electronic filing to adapt to changes in technology or to facilitate electronic filing.*

*(2)    The court may deviate from these procedures in specific cases if deemed appropriate in the exercise of its discretion.*

*(3)    Documents must be formatted for electronic filing by converting the original word processing document into Portable Document Format ("PDF"). PDF images created*

*procedural motions in accordance with the Court's standing instructions. Any party adversely affected by the action of the clerk on a motion may promptly move for reconsideration. Unless the clerk grants reconsideration, the motion for reconsideration will be submitted to a single judge or panel. <u>See</u> Internal Operating Procedure V(C).*

### Rule 28.  Briefs

(a)  **Appellant's Brief.**    The appellant's brief must contain, under appropriate headings and in the order indicated:

(1)  a disclosure statement if required by Rule 26.1;

(2)  a table of contents, with page references;

(3)  a table of authorities — cases (alphabetically arranged), statutes, and other authorities — with references to the pages of the brief where they are cited;

(4)  a jurisdictional statement, including:

    (A)  the basis for the district court's or agency's subject-matter jurisdiction, with citations to applicable statutory provisions and stating relevant facts establishing jurisdiction;

    (B)  the basis for the court of appeals' jurisdiction, with citations to applicable statutory provisions and stating relevant facts establishing jurisdiction;

    (C)  the filing dates establishing the timeliness of the appeal or petition for review; and

    (D)  an assertion that the appeal is from a final order or judgment that disposes of all parties' claims, or information establishing the court of appeals' jurisdiction on some other basis;

(5)  a statement of the issues presented for review;

(6)  a concise statement of the case setting out the facts relevant to the issues submitted for review, describing the relevant procedural history, and identifying the rulings presented for review, with appropriate references to the record (see Rule 28(e));

(7)  a summary of the argument, which must contain a succinct, clear, and accurate statement of the arguments made in the body of the brief, and which must not merely repeat the argument headings;

(8)  the argument, which must contain:

    (A)  appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies; and

    (B)  for each issue, a concise statement of the applicable standard of review (which may

appear in the discussion of the issue or under a separate heading placed before the discussion of the issues);

(9)   a short conclusion stating the precise relief sought; and

(l0)   the certificate of compliance, if required by Rule 32(g)(1).

**(b)**  **Appellee's Brief.** The appellee's brief must conform to the requirements of Rule 28(a)(1)-(8) and (10), except that none of the following need appear unless the appellee is dissatisfied with the appellant's statement:

(1)   the jurisdictional statement;

(2)   the statement of the issues;

(3)   the statement of the case; and

(4)   the statement of the standard of review.

**(c)**  **Reply Brief.** The appellant may file a brief in reply to the appellee's brief. Unless the court permits, no further briefs may be filed. A reply brief must contain a table of contents, with page references, and a table of authorities — cases (alphabetically arranged), statutes, and other authorities — with references to the pages of the reply brief where they are cited.

**(d)**  **References to Parties.** In briefs and at oral argument, counsel should minimize use of the terms "appellant" and "appellee." To make briefs clear, counsel should use the parties' actual names or the designations used in the lower court or agency proceeding, or such descriptive terms as "the employee," "the injured person," "the taxpayer," "the ship," "the stevedore."

**(e)**  **References to the Record.** References to the parts of the record contained in the appendix filed with the appellant's brief must be to the pages of the appendix. If the appendix is prepared after the briefs are filed, a party referring to the record must follow one of the methods detailed in Rule 30(c). If the original record is used under Rule 30(f) and is not consecutively paginated, or if the brief refers to an unreproduced part of the record, any reference must be to the page of the original document. For example:

- Answer p. 7;

- Motion for Judgment p. 2;

- Transcript p. 231.

Only clear abbreviations may be used. A party referring to evidence whose admissibility is in controversy must cite the pages of the appendix or of the transcript at which the evidence was identified, offered, and received or rejected.

**(f)** **Reproduction of Statutes, Rules, Regulations, etc.** If the court's determination of the issues presented requires the study of statutes, rules, regulations, etc., the relevant parts must be set out in the brief or in an addendum at the end, or may be supplied to the court in pamphlet form.

**(g)** **[Reserved]**

**(h)** **[Reserved]**

**(i)** **Briefs in a Case Involving Multiple Appellants or Appellees.** In a case involving more than one appellant or appellee, including consolidated cases, any number of appellants or appellees may join in a brief, and any party may adopt by reference a part of another's brief. Parties may also join in reply briefs.

**(j)** **Citation of Supplemental Authorities.** If pertinent and significant authorities come to a party's attention after the party's brief has been filed — or after oral argument but before decision — a party may promptly advise the circuit clerk by letter, with a copy to all other parties, setting forth the citations. The letter must state the reasons for the supplemental citations, referring either to the page of the brief or to a point argued orally. The body of the letter must not exceed 350 words. Any response must be made promptly and must be similarly limited.


*Local Rule 28.0. Addendum to Briefs Required*

**(a)** **Contents.** *In addition to the requirements of Fed. R. App. P. 28, for the court's convenience, the brief of the appellant must include an addendum containing the following items:*

**(1)** **Required.** *The judgments, decisions, rulings, or orders appealed from, including any supporting explanation (e.g., a written or transcript opinion), and in addition, where the district court or agency whose decision is under review was itself reviewing or acting upon the decision of a lower-level decision-maker, that lower-level decision as well (e.g., a recommended decision by a magistrate judge or an initial decision by an administrative law judge).*

*Note: If the decision appealed from is a text-only entry upon a docket report, a copy of the relevant entry or page of the docket report should be provided.*

**(2)** ***Optional, but encouraged.*** *The addendum may also include other items or short excerpts from the record that are either the subject of an issue on appeal (e.g., disputed jury instructions or disputed contractual provisions) or necessary for understanding the specific issues on appeal, up to 25 pages in total. Statutes, rules, regulations, etc. included as part of the addendum pursuant to Fed. R. App. P. 28(f) do not count towards this page limit.*


**(b)** ***Form.*** *The addendum shall be bound at the rear of the appellant's brief. The addendum must begin with a table of contents identifying the page at which each part begins.*

(1) *The appellee's brief may include such an addendum to incorporate materials omitted from the appellant's addendum, subject to the same limitations on length and content.*

(2) *Material included in the addendum need not be reproduced in the appendix also.*

(c) *Sealed Items.* *Notwithstanding the above, sealed or non-public items – including a presentence investigation report or statement of reasons in a judgment of criminal conviction – should not be included in a public addendum. Rather, where sealed items are to be included, they should be filed in a separate, sealed addendum.*


### Local Rule 28.1. References in Briefs to Sealed Material

*Briefs filed with the court of appeals are a matter of public record. In order to have a brief sealed, counsel must file a specific and timely motion in compliance with Local Rule 11.0(c)(2) and (3) asking the court to seal a brief or supplemental brief. Counsel must also comply with Local Rule 11.0(d), when applicable.*


### Rule 28.1.   Cross-Appeals

(a) **Applicability.** This rule applies to a case in which a cross-appeal is filed. Rules 28(a)-(c), 31(a)(1), 32(a)(2), and 32(a)(7)(A)-(B) do not apply to such a case, except as otherwise provided in this rule.

(b) **Designation of Appellant.** The party who files a notice of appeal first is the appellant for the purposes of this rule and Rules 30 and 34. If notices are filed on the same day, the plaintiff in the proceeding below is the appellant. These designations may be modified by the parties' agreement or by court order.

(c) **Briefs.**   In a case involving a cross-appeal:

(1) **Appellant's Principal Brief.** The appellant must file a principal brief in the appeal.  That brief must comply with Rule 28(a).

(2) **Appellee's Principal and Response Brief.** The appellee must file a principal brief in  the cross-appeal and must, in the same brief, respond to the principal brief in the appeal. That appellee's brief must comply with Rule 28(a), except that the brief need not include a statement of the case unless the appellee is dissatisfied with the appellant's statement.

(3) **Appellant's Response and Reply Brief.** The appellant must file a brief that responds to the principal brief in the cross-appeal and may, in the same brief, reply to the response in the appeal. That brief must comply with Rule 28(a)(2)-(8) and (10), except that none of the following need appear unless the appellant is dissatisfied with the appellee's statement in the cross-appeal:

(A)  the jurisdictional statement;